UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOSE CAMBISACA,

                               Plaintiff,

              -against-

P.O. CHRISTOPHER RUHE,
P.O. MARK RAMPOLLA, AND
SGT. JOHN ARNOLD,

                           Defendants.
-------------------------------------------------------------X

**OPINION AND ORDER**

17 Civ. 87 (JCM)

      Plaintiff Jose Cambisaca ("Plaintiff") brought this civil rights action pursuant to 42

U.S.C. § 1983 against Defendants Officer Christopher Ruhe, Officer Mark Rampolla and

Sergeant John Arnold ("Defendants"). (Docket Nos. 1, 35).  Presently before the Court are

Defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. (Docket Nos. 53, 58).  Plaintiff opposed Defendants' motions and filed a cross-

motion for summary judgment. (Docket Nos. 65, 70).  For the reasons set forth below,

Defendants' motions for summary judgment are granted in part and denied in part, and Plaintiff's

cross-motion for summary judgment is denied.[1]

## I.  BACKGROUND

### A.  Procedural Background

      On January 6, 2017, Plaintiff commenced this action against Defendants Ruhe and

Rampolla seeking damages pursuant to Section 1983 for malicious prosecution, excessive

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c).
(Docket No. 18).

detention and due process violations. (Docket No. 1).  On November 21, 2017, Plaintiff filed an Amended Complaint naming Sergeant Arnold as an additional defendant. (Docket No. 35). Following the completion of discovery, Defendants Ruhe and Rampolla filed a motion for summary judgment, (Docket No. 53), accompanied by a memorandum of law, (Docket No. 56), an attorney declaration with exhibits, (Docket No. 54), and a statement of facts pursuant to Local Civil Rule 56.1, (Docket No. 55).  Defendant Arnold filed a separate motion for summary judgment, (Docket No. 58), a memorandum of law, (Docket No. 61), an attorney declaration with exhibits, (Docket No. 60), and a Rule 56.1 statement, (Docket No. 59).

Plaintiff filed an opposition to Defendants' motions and a cross-motion for summary judgment, (Docket No. 65), accompanied by a memorandum of law, (Docket No. 66), an attorney declaration with exhibits, (Docket No. 69), and two counterstatements of facts pursuant to Local Civil Rule 56.1, (Docket Nos. 67, 68).  Defendants Ruhe and Rampolla filed a memorandum of law in opposition to Plaintiff's cross-motion, (Docket No. 70), an additional attorney declaration, (Docket No. 71), and a Rule 56.1 counterstatement, (Docket No. 72). Defendant Arnold submitted a memorandum of law in opposition to Plaintiff's cross-motion, (Docket No. 75),[2] and a Rule 56.1 counterstatement, (Docket No. 76).  Plaintiff filed a reply memorandum of law. (Docket No. 77).

## B.  Facts

The following facts are gathered from the parties' 56.1 statements and counterstatements, the exhibits attached to the parties' submissions, and the declarations submitted by the parties in support of their contentions.[3]  The facts are construed in the light most favorable to the non-

---

[2] Defendant Arnold submitted a duplicative memorandum of law in opposition to Plaintiff's cross-motion as a Rule 56.1 counterstatement. (*Compare* Docket No. 74, *with* Docket No. 75).  This appears to be a filing error.

[3] All page number citations to the record refer to the ECF page number unless otherwise noted.

moving parties in each motion for summary judgment. *Wandering Dago, Inc. v. Destito*, 879

F.3d 20, 30 (2d Cir. 2018). The facts are not in dispute, unless otherwise noted.

### i. Accident and Arrest

At all relevant times, Sergeant Arnold, Officer Rampolla and Officer Ruhe worked for

the Rye Brook Police Department. (Docket No. 67 at ¶¶ 1–4); (Docket No. 68 at ¶¶ 1–2). On

March 14, 2014, Sergeant Arnold received a report of a hit-and-run accident near Ellendale

Avenue and South Ridge Street while he was working as a desk shift supervisor. (Docket No. 67

at ¶¶ 6–8). Sergeant Arnold learned that two individuals fled the scene on foot following the

accident, (*id.* at ¶ 9), and dispatched Officers Ruhe, Rampolla and Asare to the scene, (*id.* at ¶¶

10–11). Following this, Sergeant Arnold transmitted by radio a description of the individuals

who fled as "two short Hispanic males, one wearing a blue hoodie, the other wearing a vest." (*Id.*

at ¶ 15).

While Officers Ruhe, Rampolla and Asare responded to the scene of the accident,

Sergeant Arnold prepared the blotter report, which documents the officers' response to the

incident. (Docket No. 67 at ¶¶ 12–14). After Officer Rampolla arrived, bystanders informed him

that the suspects fled behind a building on the corner of Ellendale Avenue and South Ridge

Street. (Docket No. 68 at ¶ 9). Officers Rampolla and Asare approached the building and found

a male individual near an embankment on the side of the building. (*Id.* at ¶¶ 10–11). Rye Brook

police officers radioed that the individual was wearing a blue jacket. (Docket No. 67 at ¶ 17).

The individual, who was later identified as Luis Chabla, appeared intoxicated and had a cut

above his eye. (Docket No. 68 at ¶¶ 15–16, 18). Chabla did not understand Officer Rampolla's

verbal commands. (*Id.* at ¶ 14). Anais Salcedo, the victim of the hit-and-run, informed Officer

Rampolla that Chabla was a passenger in the vehicle that struck her vehicle. (*Id.* at ¶ 17). At the time, Salcedo did not provide a description of the driver of the vehicle to Officer Rampolla. (*Id.* at ¶ 19). At 6:08 p.m., Officer Rampolla announced over the radio that he detained Chabla, but that they were still looking for the driver of the vehicle. (Docket No. 72 at ¶ 134). Sergeant Arnold learned from officers on the scene that the second suspect may have been an individual named "Aucha Placido" who lived at 67 Poningo Street in Port Chester, New York. (Docket No. 67 at ¶ 19). Sergeant Arnold documented this in his blotter report and requested that a Port Chester police officer respond to that residence. (*Id.* at ¶¶ 21–22); (Docket No. 60-5).

Officer Jonathan Rubin, who worked for the Port Chester Police Department, arrived on the scene and spoke to Chabla in Spanish. (Rubin Dep.[4] at 13). Chabla stated that the driver's name was "Manuel Albarracin." (*Id.* at 15–18). Officer Rubin conveyed Chabla's statements to Rye Brook police officers on the scene. (*Id.* at 13–15, 23–24). Officer Rubin does not recall the names of the officers that were standing with Chabla when he translated Chabla's statements. (Docket No. 68 at ¶¶ 26–27). The parties dispute whether Officers Ruhe and Rampolla were present when Officer Rubin translated Chabla's statement. (Docket No. 68 at ¶¶ 34–44); (Docket No. 72 at ¶¶ 135–40).

At 6:34 p.m., Officer Rampolla told Sergeant Arnold over the radio that Officer Rubin spoke Spanish, that they had the name of the second suspect, and that Officer Asare had the spelling of the name. (Docket No. 72 at ¶ 142). However, Officer Asare does not recall receiving any information from Chabla through Officer Rubin. (Asare Dep.[5] at 10–12). Sergeant

---

[4] Refers to Officer Rubin's deposition transcript. (Docket No. 69-6). Citations to deposition transcripts refer to the deposition page rather than the ECF page number.

[5] Refers to Officer Asare's deposition transcript. (Docket No. 69-5).

Arnold noted in the blotter report that "Port Chester P.D. advised they have received different info, different name and address, due to passenger speaking Spanish." (Docket No. 67 at ¶ 26).

At 7:10 p.m., Salcedo spoke with Sergeant Arnold by telephone and informed him that she found the second suspect on the ground outside a library on Westchester Avenue. (Docket No. 67 at ¶¶ 38–42). Officers Rampolla, Ruhe and Asare were dispatched to the library, (Docket No. 68 at ¶¶ 48–49), where they found Salcedo, Plaintiff, and a Port Chester police officer, (*id.* at ¶¶ 51–53). Salcedo confirmed that she recognized Plaintiff, who was on a stretcher, as the second suspect and the driver of the vehicle involved in the hit-and-run. (*Id.* at ¶ 58). Salcedo told Officer Ruhe that she recognized Plaintiff as the driver based on his appearance and because she remembered that the driver's jacket had lettering on the back. (Docket No. 72 at ¶ 156). At the time, Plaintiff was wearing a cream-colored sweatshirt and an Oakland Raiders jacket with no lettering on the back. (Cambisaca Dep.[6] at 11); (Docket No. 69-7 at 4–5); (Docket No. 72 at ¶ 157). However, Officer Ruhe was unable to see whether Plaintiff's jacket had lettering on the back because Plaintiff was already on the stretcher when he arrived. (Ruhe Dep.[7] at 37). In addition, the officers were unable to communicate with Plaintiff, who appeared intoxicated. (Docket No. 68 at ¶¶ 62, 65). Earlier in the day, Plaintiff was drinking alcohol at his home, walked to a liquor store, purchased a bottle of vodka, drank it, and passed out near the Port Chester library on Westchester Avenue. (Docket No. 72 at ¶ 150). The only identification Plaintiff had on his person was a Bank of America debit card, which had the name "Jose Cambisaca." (Docket No. 67 at ¶ 58); (Docket No. 68 at ¶ 60).

---

[6] Refers to Jose Cambisaca's deposition transcript. (Docket No. 69-1).

[7] Refers to Officer Ruhe's deposition transcript. (Docket No. 69-2).

At 7:58 p.m., Officer Ruhe arrested Plaintiff for driving while intoxicated and leaving the scene of an accident that caused personal injury.[8] (Docket No. 67 at ¶¶ 53–55). Officer Rampolla accompanied Plaintiff in an ambulance to White Plains Hospital. (Docket No. 68 at ¶¶ 61, 67–68). Officer Rampolla attempted to interview Plaintiff in the ambulance. (*Id.*). However, Plaintiff was unresponsive. (*Id.*). Plaintiff woke up in the hospital in handcuffs and was informed that he was under arrest. (Docket No. 67 at ¶¶ 85–87). Thereafter, Plaintiff was transported from the hospital to the police station. (*Id.* at ¶ 88).

Following Plaintiff's arrest, Salcedo went to the Rye Brook police station with Officer Ruhe to provide a written statement. (Docket No. 67 at ¶¶ 48–50). At 8:22 p.m., Salcedo signed her statement, which stated in relevant part:

> After I left the scene of the accident at around 7:08 P.M. I was driving on Westchester Ave when I saw a police car do a U turn and the officer began to talk to a [H]ispanic male who I recognized as the driver of the vehicle that hit me. I pulled to the side of the road and told the Port Chester officer that the man he was talking to was the driver. The [H]ispanic male was laying on the ground and I recognized his face and he was wearing the same clothes that I saw him in earlier, the black jacket with cream colored sleeves . . . The male [H]ispanic who was placed in the ambulance was the driver of the car that hit me. The driver is now known to me as Jose Nicolas Cambisaca.

(*Id.* at ¶¶ 51–52). Salcedo's statement also noted that the driver's jacket had lettering on the back. (Docket No. 60-6).

At 8:27 p.m., Officer Rubin called Sergeant Arnold and told him that "the passenger of the vehicle gave us the name of Manuel Albarracin as the driver." (Docket No. 67 at ¶¶ 56–57). Officer Rubin stated that he photographed Plaintiff at the library and went to a residence associated with Manuel Albarracin. (*Id.* at ¶¶ 61–63). Officer Rubin further informed Sergeant Arnold that he showed the photograph of Plaintiff to a man who

---

[8] Officers Ruhe and Rampolla state that Sergeant Arnold made the decision to arrest Plaintiff. (Docket No. 68 at ¶ 61).

identified himself as Manuel Albarracin's brother. (*Id.* at ¶ 65). The man did not recognize the photograph of Plaintiff and stated that Manuel Albarracin had been deported. (*Id.* at ¶¶ 66, 68).

At 9:09 p.m., Sergeant Arnold ran Manuel Albarracin's name through an eJustice program to search for further identifying information. (Docket No. 67 at ¶ 74). The search yielded a home address at 32 Martin Place in Port Chester, (*id.* at ¶ 75), which was the residence that Officer Rubin visited, (*id.* at ¶ 72). Sergeant Arnold placed the eJustice search result in the case file to be sent to the District Attorney's Office. (*Id.* at ¶ 76). However, Sergeant Arnold did not include Manuel Albarracin's name or his conversation with Officer Rubin in the blotter report. (*Id.* at ¶ 77).

## ii. Further Investigation

After an arrest is made by the Rye Brook Police Department, arrest paperwork is generated, reviewed by a supervisor, and forwarded to the District Attorney's Office. (Docket No. 67 at ¶ 109). Officer Ruhe prepared the case report in connection with Plaintiff's arrest, (Docket No. 76 at ¶ 164), which Sergeant Arnold reviewed and signed, (*Id.* at ¶ 191). Officer Rampolla executed a supplemental narrative to Officer Ruhe's case report. (Docket No. 69-16). The case report provided a narrative of Plaintiff's arrest, including Salcedo's identification. (*Id.*). However, it did not include Chabla's identification of Manuel Albarracin as the driver or Officer Rubin's conversation with Manuel Albarracin's brother.[9] (*Id.*). In addition to the arrest paperwork, the vehicle involved in the hit-and-run was secured. (Docket No. 68 at ¶ 74). A business card for "Albarracin Landscaping" with Manuel Albarracin's contact information was

---

[9] The document is titled "New York State Incident Report," but was identified as the "case report" during Officer Ruhe's deposition. (Docket No. 69-2 at 33).

recovered from the vehicle and provided to the District Attorney's Office. (Docket No. 68 at ¶ 102); (Docket No. 69-11); (Docket No. 76 at ¶ 145).

Between 2014 and 2016, Rye Brook Police Lieutenant Eugene Matthews responded to requests for audio recordings from the District Attorney's Office. (Docket No. 67 at ¶¶ 106–08). On July 2, 2014, Lieutenant Matthews created a disc containing digital audio copies of the radio transmissions and phone calls that occurred during Plaintiff's arrest, which he forwarded to the District Attorney's Office. (*Id.* at ¶¶ 113–15). However, the disc did not contain an audio recording of the communication between Sergeant Arnold and Officer Rubin discussing Chabla's identification of Albarracin. (*Id.* at ¶ 116). The radio communication in which Officer Rubin conveyed this information to Sergeant Arnold was never provided to the District Attorney's Office. (*Id.* at ¶ 229).

In March 2014, Assistant District Attorney ("ADA") Hedayati was assigned to Plaintiff's prosecution. (Docket No. 76 at ¶ 212). Sergeant Arnold spoke with an ADA three days after Plaintiff's arrest. (Docket No. 76 at ¶ 203). During this conversation, Sergeant Arnold did not inform the ADA that Chabla identified Manuel Albarracin as the driver. (*Id.*). ADA Hedayati testified at her deposition that she was unaware that Chabla identified Albarracin as the driver of the vehicle. (*Id.* at ¶ 214).

In December 2015, ADA Calvi was assigned to Plaintiff's prosecution. (Docket No. 76 at ¶ 213). ADA Calvi testified that she became aware of the name Manuel Albarracin between December 2015 and September 2016. (Calvi Dep.[10] at 26–27). However, she does not remember how she became familiar with Albarracin's name. (*Id.* at 26, 93–95). ADA Calvi

---

[10] Refers to ADA Michelle Calvi's deposition transcript. (Docket No. 69-17).

testified that she never heard the radio communication between Sergeant Arnold and Officer Rubin while prosecuting Plaintiff. (Docket No. 76 at ¶ 231). December 14, 2015 was the earliest date that the audio recordings of the radio communications were disclosed to Plaintiff's defense attorney. (*Id.* at ¶ 227); (Docket No. 72 at ¶ 222). ADA Calvi testified that she spoke with Officer Rubin after she was assigned to Plaintiff's prosecution. (Calvi Dep. at 75–76). The record does not provide the details of ADA Calvi's conversation with Officer Rubin. However, ADA Calvi stated that there was nothing in the police paperwork provided to the District Attorney's Office documenting Chabla's identification of Albarracin as the driver of the vehicle involved in the hit-and-run. (Docket No. 76 at ¶ 218).

### iii. Criminal Proceedings

Officer Ruhe prepared and signed the charging documents, which charged Plaintiff with driving while intoxicated, leaving the scene of an accident, unlicensed operation of a vehicle, criminal mischief, and reckless endangerment. (Docket No. 76 at ¶ 200). On March 15, 2014, Plaintiff was arraigned, and bail was set at $2,500. (Docket No. 67 at ¶¶ 89–91). Plaintiff asked a friend to withdraw money from Plaintiff's bank to pay bail. (*Id.* at ¶¶ 95–96). However, the friend was unable to make a withdrawal because the bank was closed. (*Id.* at ¶ 97). On March 17, 2014, the United States Department of Homeland Security ("DHS") issued an "Immigration Detainer – Notice of Action" instructing the Westchester County Jail to maintain custody of Plaintiff for up to 48 hours after which he would have otherwise been released. (*Id.* at ¶¶ 100–02). Additionally, DHS issued a Warrant for Arrest of Alien against Plaintiff. (*Id.* at ¶ 103).

During a state court hearing on March 4, 2015, Salcedo testified about the circumstances of the hit-and-run and her identification of Plaintiff as the driver of the car. (Docket No. 54-14 at

10–12).[11]  Officer Rampolla also testified about the circumstances surrounding Plaintiff's arrest. (*Id.* at 39).  Following cross-examination and oral arguments, the state court determined Salcedo's identification was sufficient to establish "reasonable cause" to arrest Plaintiff. (*Id.* at 61).  On October 15, 2014, Plaintiff's bail was reduced to $500. (Docket No. 68 at ¶ 128).  Plaintiff never paid bail and spent approximately seven and one-half months in jail. (Docket No. 67 at ¶ 104).

Plaintiff retained Michael Litman, Esq. to represent him in November 2015. (Docket No. 76 at ¶ 236).  On January 4, 2016, Litman emailed ADA Calvi with information regarding Manuel Albarracin.[12] (Docket No. 54-19).  Litman engaged the services of a private investigator, who confirmed that Albarracin was the owner of the vehicle involved in the accident for which Plaintiff was charged. (Docket No. 76 at ¶¶ 239, 243).  On February 29, 2016, Litman emailed this information to ADA Calvi. (Docket No. 54-20).  On September 29, 2016, Plaintiff was acquitted of all charges following a jury trial. (Docket No. 67 at ¶ 124).

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v.*

---

[11] Refers to the criminal hearing transcript, dated March 4, 2015.

[12] Albarracin's surname is spelled "Alvarracin" and "Alvarracion" in the email.

*Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (internal quotation and citation omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000). The Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

Parties moving for and opposing summary judgment in the Southern District of New York must also submit short and concise statements of facts, supported by evidence that would

be admissible at trial. Local Civ. R. 56.1. The opposing party must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, uncontested facts cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement; the Court is free to disregard the assertion in the absence of citations or where the cited materials do not support the factual assertions in the statements. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Nevertheless, the Court is "not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Malicious Prosecution

All parties seek summary judgment on Plaintiff's malicious prosecution claim. Defendants Ruhe and Rampolla argue that: (i) probable cause existed to arrest and prosecute Plaintiff, (ii) probable cause was not vitiated between Plaintiff's arrest and prosecution; (iii) the officers did not act with malice; and (iv) they are entitled to qualified immunity. (Docket No. 56 at 11–17, 31).[13] Sergeant Arnold echoes Officers Ruhe and Rampolla's arguments and further contends that he did not initiate or continue Plaintiff's prosecution. (Docket No. 61 at 12–16,

---

[13] Refers to Officers Ruhe and Rampolla's memorandum of law in support of their motion for summary judgment. Citations to the parties' briefs refer to the ECF page number.

20).[14]  Plaintiff opposes Defendants' motions and maintains that he has conclusively established a claim for malicious prosecution as a matter of law. (Docket No. 66 at 14–32).[15]

To prevail on a Section 1983 malicious prosecution claim, a plaintiff must show: "(i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted).  Here, there is no dispute that Plaintiff's criminal proceedings were terminated in his favor.  Plaintiff was acquitted of all criminal charges following a jury trial.  Moreover, Officers Ruhe and Rampolla do not argue that they lacked personal involvement in initiating or continuing Plaintiff's prosecution.  However, the parties dispute the remaining elements of Plaintiff's malicious prosecution claim.

### i.  The Initiation Requirement

 "[T]here is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  However, a plaintiff asserting a malicious prosecution claim may overcome that presumption by "demonstrating that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* (internal quotation marks and citation omitted).

"Where the defendant in a malicious prosecution action is a police officer, courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits,

---

[14] Refers to Sergeant Arnold's memorandum of law in support of his motion for summary judgment.

[15] Refers to Plaintiff's joint memorandum of law in opposition to Defendants' motions for summary judgment and in support of his cross-motion for summary judgment.

swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457–58 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Furthermore, "[t]he 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect," *Dufort v. City of New York*, 874 F.3d 338, 353 (2d Cir. 2017), or "by withholding material exculpatory evidence from the prosecutor." *Stukes v. City of New York*, No. 13-CV-6166(NGG)(VVP), 2015 WL 1246542, at *9 (E.D.N.Y. Mar. 17, 2015); *see Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) ("A police officer can also initiate a prosecution by . . . withholding material information from a prosecutor.").

Here, Plaintiff has presented sufficient evidence to rebut the presumption that the District Attorney's Office exercised independent judgment in deciding whether to initiate and continue Plaintiff's prosecution. While Sergeant Arnold did not sign the criminal complaint or corroborating affidavits, he spoke with an ADA about Plaintiff's arrest three days after the arrest and did not disclose Chabla's statement at that time. (Docket No. 76 at ¶ 203). Furthermore, Sergeant Arnold's blotter report, which provided a written narrative of the incident, omitted this exculpatory evidence. The blotter report noted Salcedo's identification of Plaintiff as the driver, but failed to include or memorialize Chabla's identification of Albarracin even though Sergeant Arnold was aware of this fact. (Docket No. 60-5); (Rubin Dep. at 13–15, 23–24). Chabla's statement was undoubtedly material to Plaintiff's prosecution and was consistent with the name found on the business card inside the vehicle involved in the hit-and-run. *See Richards v. City of New York*, No. 97 Civ. 7990 (MBM), 2003 WL 21036365, at *14 (S.D.N.Y. May 7, 2003) (noting that where an officer did not disclose exculpatory eyewitness testimony to the District Attorney's Office, there was sufficient evidence to support the inference that police officers

withheld material information). Moreover, neither ADA Hedayati nor ADA Calvi were aware of

Chabla's identification throughout Plaintiff's prosecution. (Docket No. 76 at ¶¶ 214, 218). Thus,

the Court cannot conclude that Sergeant Arnold disclosed "all material information within his

knowledge," *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (internal

quotation marks and citation omitted), and correspondingly, that he lacked the requisite personal

involvement in initiating or continuing Plaintiff's criminal prosecution.

### ii. Probable Cause and Malice

Defendants contend that probable cause existed to arrest and prosecute Plaintiff, while

Plaintiff argues that there was no probable cause. "[T]he existence of probable cause is a

complete defense to a claim of malicious prosecution." *Savino v. City of New York*, 331 F.3d 63,

75 (2d Cir. 2003). While related, "the probable cause inquiries for false arrest and malicious

prosecution are distinct." *Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014)

(summary order). For claims of false arrest, "'probable cause to arrest exists when the officers

have knowledge or reasonably trustworthy information of facts and circumstances that are

sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

committed or is committing a crime.'" *Dufort*, 874 F.3d at 348 (quoting *Weyant v. Okst*, 101

F.3d 845, 852 (2d Cir. 1996)). Generally, "[p]robable cause to arrest is a defense to a malicious

prosecution claim unless, after the arrest, additional facts come to light that vitiate the probable

cause." *Smith v. City of New York*, 388 F. Supp. 2d 179, 186 (S.D.N.Y. 2005).

"The probable cause standard in the malicious prosecution context is slightly higher than

the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). "In

the malicious prosecution context, probable cause is the totality of 'facts and circumstances as

would lead a reasonably prudent person to believe the plaintiff guilty.'" *Soto v. City of New York*,

132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) (quoting *Stanbury*, 721 F.3d at 95). "This inquiry

considers the facts known or reasonably believed at the time the prosecution was initiated, and not at the time of arrest. *Id.* (internal quotation marks and citation omitted). "Ultimately, whether probable cause exists 'depends on the totality of the circumstances' of each case, and is not susceptible to 'precise definition or quantification into percentages.'" *Dufort*, 874 F.3d at 348 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Here, the Court finds that Defendants lawfully arrested Plaintiff based on Salcedo's identification.[16] "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Salcedo, the victim of the hit-and-run, recognized Plaintiff and identified him to the officers as the driver of the vehicle that hit her car. Plaintiff argues that probable cause did not exist because Officers Ruhe and Rampolla were present when Chabla, the passenger in the vehicle, identified Albarracin as the driver. However, "[t]he Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification or alleged victim of a crime." *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 205 (E.D.N.Y. 2014) (citing *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006)); *see Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (finding probable cause to arrest despite conflicting accounts of arrestee and two eyewitnesses, where eyewitnesses' statements inculpated arrestee); *Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 145 (N.D.N.Y. 1998) ("Even when an arresting officer is faced with

---

[16] Both the Complaint and Amended Complaint appear to raise a false imprisonment claim. (Docket No. 1 at 9); (Docket No. 35 at 14). The parties do not address this claim in their motion papers. However, to the extent Plaintiff intended to bring a false imprisonment claim, it is dismissed because Defendants had probable cause to arrest Plaintiff. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("Probable cause is a complete defense to a constitutional claim of false arrest and false imprisonment.") (citations omitted).

competing accounts from different eyewitnesses, an officer is entitled to make an arrest based on believing the testimony of one side or the other . . ..").  Importantly, at the time of the arrest, the officers could not see the back of Plaintiff's jacket, nor did they have enough information to question the veracity of Salcedo's identification.

However, the Court finds that a triable issue of fact exists as to whether Defendants were entitled to continue to rely on Salcedo's identification in initiating and continuing Plaintiff's prosecution.  "[E]ven when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotation marks and citations omitted).  However, "[i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Id.*  "The defendants are not obliged to exonerate plaintiff or uncover exculpatory evidence, but the 'failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Lawrence v. City Cadillac*, No. 10 Civ. 3324(PKC), 2010 WL 5174209, at *6 (S.D.N.Y. Dec. 9, 2010) (quoting *Lowth*, 82 F.3d at 571).

Here, Officer Rubin spoke to Sergeant Arnold about Chabla's statement after Plaintiff's arrest.  Plaintiff was arrested at approximately 7:58 p.m., and Officer Rubin informed Sergeant Arnold that Chabla identified Albarracin as the driver of the vehicle at approximately 8:27 p.m. Standing alone, this fact does not vitiate probable cause because the officers were still entitled to rely on Salcedo's identification over Chabla's identification.  *See Curley*, 268 F.3d at 70. However, there is evidence that Defendants withheld Chabla's identification from the District

Attorney's Office.[17]  Withholding exculpatory evidence supports a finding of a lack of probable cause to prosecute. *See Crews*, 996 F. Supp. 2d at 208.

Moreover, the accuracy of Salcedo's identification was undermined by information uncovered after Plaintiff's arrest.  Salcedo based her identification of Plaintiff on her recollection that the driver of the vehicle, who ran away following the accident, wore a black jacket with lettering on the back.  However, Plaintiff's jacket did not have lettering on the back.  Officer Ruhe was unable to see the back of Plaintiff's jacket during the arrest because Plaintiff was on a stretcher.  But Plaintiff's jacket was recovered and photographed following his arrest.  In addition, police recovered a business card from the vehicle involved in the hit-and-run with Manuel Albarracin's name and contact information.[18]  These additional discrepancies, viewed with all reasonable inferences drawn in Plaintiff's favor, challenged the reliability of Salcedo's identification and bolstered Chabla's identification, necessitating further investigation.  *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) ("the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (internal quotation marks and citation omitted).  Accordingly, a reasonable jury could find that the information discovered after Plaintiff's arrest vitiated the accuracy of Salcedo's identification and, by extension, probable cause.[19] *See Crews*, 996 F. Supp. 2d at 207–

---

[17] While Officers Ruhe and Rampolla contend that they were not informed of Sergeant Arnold's conversation with Officer Rubin, (Docket No. 72 at ¶ 160), there is evidence that they had "the name of the guy" that had driven the vehicle that caused the accident and it was not Plaintiff, (*id.* at ¶ 142).

[18] Officers Ruhe and Rampolla claim that they were not aware that Albarracin's business card was recovered from the vehicle. (Docket No. 70 at 6).  However, Albarracin's business card was vouchered and placed in Officer Ruhe's case file. (Ruhe Dep. at 39–40).

[19] Defendants Ruhe and Rampolla argue that Plaintiff's malicious prosecution claim is belied by his criminal defense attorney's statement that Albarracin's identity did not vitiate probable cause. (Docket No. 10).  Even if Plaintiff's criminal defense attorney's admission stood for the proposition that Chabla's statement did not vitiate probable cause, it is a conclusory fact that cannot be considered on summary judgment. *See BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir.1996) ("[U]ltimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary judgment motion.").

08 (denying summary judgment on plaintiff's malicious prosecution claim where post-arrest evidence undermined victim's prior identification). Conversely, Plaintiff is not entitled to summary judgment as a matter of law. If the evidence and corresponding inferences are viewed in a light favorable to the Defendants, the record does not conclusively establish that Defendants lacked probable cause to prosecute Plaintiff. This issue can only be resolved by evaluating all the evidence, and the credibility of the witnesses, which is the role of the jury.[20] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that "the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" on a motion for summary judgment).

Defendants also contend that there is no evidence of malice. Plaintiff disagrees and argues that the record conclusively establishes that Defendants acted with malice. "Under New York law, malice does not have to be actual spite or hatred, but requires only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Dufort*, 874 F.3d at 353 (internal quotation marks omitted). Here, a reasonable jury could conclude that Defendants acted with malice by failing to disclose Chabla's identification. Sergeant Arnold, for example, noted both Salcedo's identification of Plaintiff and the identification of another individual named "Aucha Placido" in the blotter report, but not Chabla's statement. Moreover, "'the existence of malice may be inferred from a finding that defendants lacked probable cause to initiate criminal proceedings.'"

---

[20] Defendants assert that their liability should be limited to when the prosecutor decided to continue with Plaintiff's prosecution after she: (i) received Manuel Albarracin's name, (ii) spoke with Officer Rubin, (iii) received the audio recordings of the radio communications, and (iv) obtained additional information from Plaintiff's criminal defense attorney. (Docket No. 70 at 9, n. 2); (Docket No. 75 at 6). These examples occurred at different times during Plaintiff's prosecution and do not provide a definitive benchmark to cap Defendants' liability. Furthermore, the audio recording in which Officer Rubin identified Manuel Albarracin as the driver to Sergeant Arnold was never provided to the District Attorney's Office. (Docket No. 67 at ¶ 229). Nor do the cited occurrences conclusively establish that the prosecutor was made aware that Chabla identified Albarracin as the driver of the vehicle. However, this issue may be briefed more fully in a motion *in limine*.

*Minter v. Cty. of Westchester*, No. 08 Civ. 7726(WHP), 2011 WL 856269, at *9 (S.D.N.Y. Jan. 20, 2011) (quoting *Rounesville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994)). "Accordingly, where probable cause cannot be determined on summary judgment, the same generally holds true on the issue of malice." *Id.* Conversely, a jury could reasonably accept Defendants' belief that they were looking for the same person despite receiving different names. (Docket No. 61 at 6). Thus, the issue of malice must be resolved by the jury.

### iii. Qualified Immunity

Defendants assert that they are entitled to qualified immunity, but expend little effort arguing this point. (*See* Docket No. 56 at 31); (Docket No. 61 at 20); (Docket No. 70 at 29); (Docket No. 75 at 10). "Qualified immunity shields police officers acting in their official capacity from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (internal quotation marks and citation omitted). "The Supreme Court has established a two-part inquiry to determine when a district court should hold that the doctrine of qualified immunity bars a suit against government officials: (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right; and (2) the court must then consider whether the officials' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

Sergeant Arnold argues that "no court has previously determined that the failure to write the name of another suspect, but including that suspect's name in production of records to the District Attorney" violates a clearly established right. (Docket No. 61 at 21). Sergeant Arnold's omission is not merely the failure to write down a suspect's name. Rather, failing to include an eyewitness statement identifying another individual as the perpetrator of the crime is

quintessential suppression of exculpatory evidence. And the constitutional right to be free from prosecution based on suppressed exculpatory evidence was clearly established at the time of Plaintiff's pretrial detention. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 642 (E.D.N.Y. 2017).

Defendants also contend that arguable probable cause existed to prosecute Plaintiff and, therefore, they are entitled to qualified immunity. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks and citation omitted). However, "[i]t is well settled that qualified immunity would not exist if a plaintiff proved that a police officer intentionally withheld exculpatory information from prosecutors." *Crews*, 996 F. Supp. 2d at 216 n.23. Moreover, while qualified immunity "ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) (internal quotation marks and citation omitted). Here, outstanding issues of facts exist regarding Defendants' conduct, what information was made known to them, and whether they intentionally withheld Chabla's statement. Thus, the Court is precluded from finding qualified immunity on this issue.

Accordingly, the Court denies the parties' motions for summary judgment on Plaintiff's malicious prosecution claim.

## B. Excessive and Prolonged Detention

Plaintiff argues that Defendants violated his Fourth Amendment right to be free from excessive detention by failing to disclose Chabla's identification of Albarracin as the driver of the vehicle involved in the hit-and-run. (Docket No. 66 at 32–38). Defendants maintain that: (i)

the withheld evidence did not conclusively establish Plaintiff's innocence, (ii) the evidence was not readily available, (iii) their conduct did not "shock the conscience," and (iv) they had no personal involvement in setting Plaintiff's bail. (Docket No. 56 at 17–30); (Docket No. 61 at 17–20).

"To prevail on a claim of excessive detention (or '*Russo* claim'), a plaintiff must demonstrate '(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct shocks the conscience.'" *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 401–02 (E.D.N.Y. 2014) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007)). "The relevant factors to consider in determining whether a plaintiff's Fourth Amendment right to be free from excessive detention was violated are: (1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked; and (3) the alleged intentionality of the defendants' behavior." *Id.* at 402. "The state of mind of a government defendant is an integral aspect of any 'shock the conscience' standard . . .'deliberate indifference'—but not negligence—can support a finding of liability in situations where the government owes a special duty of care to those in its charge." *Russo*, 479 F.3d at 210.

Viewing the record in a light most favorable to Plaintiff, a jury could reasonably infer that Defendants did not forward exculpatory evidence to the District Attorney's Office. *See supra* Point III.A.ii. In addition, Plaintiff was detained for over seven months. However, Plaintiff has not established the third element of a *Russo* claim—that Defendants' conduct "shocks the conscience." The facts here are distinguishable from *Russo*. Russo was arrested for a robbery at a gas station after a cashier identified him from a photo array. *Russo*, 479 F.3d at

199–203. The robbery was recorded by a security camera, which showed that the robber's forearms did not have any tattoos. *Id.* at 199–200. Russo, however, had "prominent tattoos on his forearms." *Id.* at 200. Following his arrest, Russo asked the officers to check the security footage to determine whether the robber had any tattoos. *Id.* In an attempt to evoke a confession from Russo, the officers falsely represented that the footage, which was under their exclusive control, showed that the robber had tattoos. *Id.* Moreover, the officers in *Russo* actively hid the only copy of the exculpatory videotape. Taking all of this into consideration, the Second Circuit found that the record "would readily support a jury finding of either intentional violation of, or deliberate indifference to, Russo's constitutional rights." *Id.* at 210.

Here, unlike *Russo*, "the facts here do not support a finding of intentionality on the part of [D]efendants." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 225 (E.D.N.Y. 2007). Defendants did not affirmatively misrepresent the substance of Chabla's statement, nor did they actively hide Chabla's statement from Plaintiff. For example, Sergeant Arnold included Albarracin's eJustice search in the case file. While this did not connect Albarracin to Chabla's statement, it indicates that Sergeant Arnold was not intentionally hiding Albarracin's identity. In addition, the record indicates that Defendants did not have exclusive control over the audio recordings of the radio communications that relayed Chabla's identification of the driver. (Docket No. 67 at ¶¶ 106–08, 113–16); *see Nzegwu v. Friedman*, No. 10-CV-02994 CBA RML, 2014 WL 1311428, at *13 (E.D.N.Y. Mar. 31, 2014), *aff'd*, 605 F. App'x 27 (2d Cir. 2015) (finding that defendants' behavior did not shock the conscience where the exculpatory evidence in question was not in defendants' exclusive possession). Taken as a whole, this behavior does not "shock the conscience."

Moreover, the exculpatory evidence at issue here is testimonial, while the evidence in *Russo* was nontestimonial surveillance footage. *See Wilson v. City of New York*, 480 F. App'x 592, 595 (2d Cir. 2012) (summary order) (distinguishing *Russo* where "[h]ere, most of the evidence was testimonial, and while the evidence was conflicting, some of it specifically identified [plaintiff] as a non-shooter accomplice."). The surveillance footage in *Russo* was easily verifiable and affirmatively established Russo's innocence, whereas Chabla's statement did not. *See Jackson v. City of New York*, 29 F. Supp. 3d 161, 178 (E.D.N.Y. 2014) ("*Russo* has been narrowly construed to involve situations where a law enforcement official has mishandled or suppressed readily available exculpatory evidence . . .."); *Nelson*, 524 F. Supp. 2d at 225 (dismissing *Russo* claim where plaintiff argued that defendants could have concluded that he was not the perpetrator "had defendants done a thorough and proper investigation into the complete information they had"). Thus, the record does not support a level of intentionality or deliberate indifference necessary to establish behavior that shocks the conscience. *See Sanders v. City of New York*, No. 12 CV 113(PKC)(LB), 2015 WL 1469514, at *19 (E.D.N.Y. Jan. 7, 2015), *report and recommendation adopted*, 2015 WL 1469506 (E.D.N.Y. Mar. 30, 2015) (dismissing *Russo* claim where defendants failed to forward an exculpatory security video, but plaintiff did not establish that the failure to produce the video shocked the conscience).

Accordingly, Defendants' motion for summary judgment on Plaintiff's *Russo* claim is granted and Plaintiff's cross-motion for summary judgment on this claim is denied.[21]

---

[21] Because the Court has found as a matter of law that Defendants' conduct does not shock the conscience, the Court need not reach Defendants' remaining arguments.

### C. Due Process Violation

Plaintiff claims that Defendants violated his due process rights under the Fourteenth Amendment by failing to turn over Chabla's statement as *Brady* material.[22] "'The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment.'" *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 467 (S.D.N.Y. 2009) (quoting *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)). "Because *Brady* and its progeny are grounded in the Due Process Clauses of the Constitution, the essential purpose of the rules enunciated in these cases is to protect a defendant's right to a fair trial by ensuring the reliability of any criminal verdict against him." *Id.* (internal quotation marks omitted). To establish a *Brady* violation, Plaintiff must show that: "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *Id.* (internal quotation marks omitted).

Plaintiff's *Brady* claim fails as a matter of law because the failure to disclose Chabla's statement did not result in prejudice. The jury verdict acquitting Plaintiff of the criminal charges resulting from his arrest "negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim that might arise from Defendants' alleged suppression of exculpatory evidence." *Ambrose*, 623 F. Supp. 2d at 471; *see McClean v. Cty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *18 (S.D.N.Y. Dec. 3, 2018) ("Courts have categorically rejected denial of a right to fair trial claims based on *Brady* violations where the plaintiff was not

---

[22] The Amended Complaint identifies both the Fifth and Fourteenth Amendments. (Am. Compl., Docket No. 35 at ¶ 84). However, "because the Fifth Amendment Due Process Clause applies only to the federal government, [Plaintiff's] due process claims arise solely from the Fourteenth Amendment." *LaForgia v. Hoch*, No. 15-CV-8589 (KMK), 2018 WL 4682019, at *4 n.2 (S.D.N.Y. Sept. 28, 2018) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)).

convicted in the underlying criminal trial.").  Moreover, "the fact that suppression of *Brady* material could prevent a defendant from securing an earlier favorable termination of his or her case is not considered as a potential source of 'prejudice' within the meaning of the *Brady* rule." *Ambrose*, 623 F. Supp. 2d at 472; *see Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) ("the remedy for a *Brady* violation is *vacatur* of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to her.").  Thus, because Plaintiff was acquitted at trial "he cannot establish that, had the exculpatory or impeachment evidence not been suppressed, there is a reasonable probability that the verdict would have been different." *McClean*, 2018 WL 6329420 at *18.

Accordingly, Plaintiff's due process claim based on Defendants' alleged *Brady* violation is dismissed as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  Plaintiff's cross-motion for summary judgment is denied.  The only claim that remains is Plaintiff's malicious prosecution claim against Defendants.  The Clerk is respectfully requested to terminate the pending motions. (Docket Nos. 53, 58, 65).

Dated:   July 3, 2019
         White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge
